EMMA HAHN, PLAINTIFF-RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Submitted October 25, 1935—Decided January 31, 1936.

For the plaintiff-respondent, *David T. Wilentz.*

For the defendant-appellant, *Clifford I. Voorhees.*

The opinion of the court was delivered by

WELLS, J. This is defendant's appeal from a judgment of the Supreme Court in a case tried at the Middlesex Circuit before a jury wherein a verdict was rendered in favor of the plaintiff for $11,600.

The suit was upon a policy of life insurance issued by the defendant upon the life of Michael Hahn, payable to his wife, the plaintiff, as beneficiary.

The written application for the policy was made October 31st, 1931, the policy was dated November 25th, 1931. Michael Hahn died August 2d, 1932.

The application contained numerous questions and answers. Part A of the application contained general information, was signed by the applicant and witnessed by Joseph

H. Gati, the agent of the defendant. Part B of the application consisted of questions to be asked by the medical examiner and supposed to be answered by the applicant. It was signed by the applicant and witnessed by the medical examiner.

Both Part A and Part B contained untruthful answers.

Part A of the application contained a question addressed to the insured and answers thereto, *inter alia,* as follows:

"*Q*. 13. Have you any other application or negotiation for life, accident, or health insurance now pending or contemplated? *A*. No."

The undisputed testimony was that this answer was false, and that on October 20th, 1931 (ten days before he signed the application for the policy herein), the insured applied to the Prudential Insurance Company for an insurance policy for $10,000 on his life, which was issued November 4th, 1931. Appended to Part A was this statement; "It is understood and agreed; That the foregoing statements and answers are correct and wholly true, and, together with the answers to questions on Part B hereof, they shall form the basis of the contract of insurance if one be issued."

The policy itself states that it was issued in consideration of the application thereof, "a copy of which application is attached hereto and made a part hereof;" and further provides as required by our Insurance law, *Pamph. L.* 1907, *p.* 133, § 1 (4), that "all statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties."

Part B of the application contained a question as to whether the insured had ever received or applied for any disability or compensation benefits or any benefit under a policy of accident, health or fraternal insurance, to which the answer set down was "No." It was undenied that the insured was a member of the Woodmen of the World and that in 1930 sick benefits were paid him covering illness from October 16th to November 22d, 1930.

There were also untruthful replies to questions concerning

the number of doctors whom insured had consulted, or by whom he had been treated, and concerning diseases or ailments from which he had suffered.

It was because of these alleged false statements, misrepresentations and suppressions of material facts appearing in Part A and Part B of the application that the defendant company refused to pay the beneficiary.

The appellant presents four points for reversal.

The first point is that the trial court erroneously refused to direct a verdict in favor of the defendant. The grounds upon which the motion was based were that the plaintiff had failed to establish a *prima facie* case, that having asserted in her complaint, a compliance with the provisions of the policy, the plaintiff must establish by the preponderance of the testimony a case of a factual nature sufficient to create a jury question; that the question of the illiteracy of the insured (testified to by a number of witnesses for the plaintiff) was "ruled out" by reason of the documentary testimony offered by the defendant, consisting of the policy, application, proofs of death, &c.; all of which appellant argued showed "beyond peradventure of a doubt that Michael Hahn knew, understood, read and comprehended the English language." Whereupon counsel for appellant made the significant statement to the court that—"if the plaintiff sustains the burden of illiteracy, then the court should properly submit the case to the jury." This in short was the argument for the motion.

The motion was denied, and, we think, properly.

Mr. Justice Trenchard, speaking for this court in *Kerpchak* v. *John Hancock Mutual Life Insurance Co.*, 97 *N. J. L.* 196, cited in *Locker* v. *Metropolitan Life Insurance Co.*, 107 *N. J. L.* 257, said—

"The legal rule is that where, as here, a policy provides, as required by our Insurance law, that 'all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties,' the policy will be avoided, for a misrepresentation in the application, made a part thereof, if the misrepresentation be material and fraudu-

lent; that is to say if it be the statement of something as a fact, which is untrue, and which the insured stated, knowing it to be untrue, and with an intent to deceive, or which he stated positively as true, without knowing it to be true, and which had a tendency to mislead; such fact in either case being material to the risk." Citing *Prahm* v. *Prudential Insurance Co.*, 97 *N. J. L.* 206.

There is no dispute as to the materiality to the risk of the questions and answers contained in the application. The question is whether any of the material false answers was made knowingly and willfully. If so, such false statement or statements will avoid the policy.

With this in mind let us briefly examine the evidence, first considering the questions contained in Part B of the application which were supposed to be asked by the medical inspector and answered by the insured. The record shows that Gati, the agent at that time for the defendant, testified that the insured spoke Hungarian but could not speak English. Gati, who spoke both English and Hungarian, acted as interpreter between the medical inspector, who spoke in English, and the insured, who spoke in Hungarian, in the translation of such of the questions on Part B of the application as were asked by the medical inspector of the insured, and the answers of the insured to the questions so asked. The answers to the questions were written down by the medical inspector.

Gati, however, testified that none of the questions on Part B, which appellant says insured answered falsely, were asked by the medical inspector. This is denied by the inspector. The uncontradicted testimony, however, is that the entire physical examination, including the asking and answering of thirty or more questions, took only ten minutes.

If these questions were not asked, it follows that there could not have been answers made by the insured and therefore there could be no representation.

The evidence as to insured's proficiency in the English language was also conflicting. The testimony of the plain-

tiff's witnesses (which appellant says should be disregarded because they are "very interested") was that the insured, who was a Hungarian, could not read, write, speak nor very well understand the English language. The testimony offered by the defendant was to the contrary.

In *Guarraia* v. *Metropolitan Life Insurance Co.*, 90 *N. J. L.* 682, a case very similar to the instant case, the question was with reference to the effect of a false statement in an application for insurance and the court said:

"The policy says: 'All statements by the insured shall, in the absence of fraud, be deemed representations and not warranties.' The result of this seems to be that they are the legal equivalent of representations in any case and we must look for fraud in order to vitiate the policy. Here we are met by the fact that the insured was an Italian apparently not well acquainted with the English language, confronted with an English speaking doctor, who probably conducted the examination in the usual more or less perfunctory manner and had the insured sign the paper more or less as a matter of form. The judge left it to the jury to say whether there had been intentional misrepresentation. We are inclined to think that this course was right. There is little doubt that the deceased had consumption, or that he probably had chronic bronchitis and probably other diseases, but the terms of the policy require the company to show that he had intentionally misrepresented these matters, and we do not think this was shown as a court question."

By reason of the conflict in the evidence concerning the understanding and use by the insured of the English language, and concerning the asking and answering of the questions on Part B of the application, we think that it was for the jury to decide whether or not the insured was guilty of willful and fraudulent representations on this phase of the case.

Unless the statements were fraudulently made they did not void the policy. *Duff* v. *Prudential Insurance Co.*, 90 *N. J. L.* 646.

Secondly let us consider the alleged false answer by insured to question 13, Part A, of the application, hereinbefore set forth, which appellant contends was knowingly and willfully false and voids the policy.

As to this, the plaintiff on cross-examination elicited from Gati, when testifying as a witness for defendant, the admission that the insured had told him when he applied for the policy involved in this suit that he had made an application to the Prudential Insurance Company for insurance, but that he hadn't received his policy yet.

No explanation was asked of nor made by Gati for failure to properly record the insured's answer to question 13, Part A. Appellant argues that Gati was acting in concert with the insured to defraud the defendant and was therefore the insured's and not defendant's agent, citing *Prudential Insurance Co.* v. *Milonas,* 118 *N. J. Eq.* 343.

The answer to this is that there is no proof (as in the Milonas case, *supra*) of any collusion between Gati and the insured and no proof of any fraud; and collusion and fraud are not presumed but must be proved. In the absence of evidence to the contrary, the inference or presumption is one of honesty.

We conclude therefore that the court also properly submitted to the jury the question of the willful and fraudulent misrepresentation or suppression on the part of the insured as to "other pending insurance," raised by the question and answer to question 13, Part A, of the application.

We therefore find no merit in appellant's first point.

The second point argued by the appellant for reversal is that the court erred in refusing to charge specifically eighteen of the twenty-four requests to charge made by the defendant.

Our examination of these requests leads us to the conclusion that such of them as were proper were charged by the court, either in the identical or in substantially the identical language of the requests.

Without discussing the legal concept contained in the requests which were not charged, it is sufficient to say that

they omitted the recital of salient facts or principles of law. Many of them were based on the assumption that if the particular representation set forth in the request was not true the plaintiff must therefore fail to recover, and they omitted an essential condition under the facts, namely that there must be fraudulent and willful representations.

We find no error in the court's refusal to charge as requested by the defendant.

Appellant's third point is "that the charge of the court to the jury was erroneous," citing an isolated part thereof.

Inasmuch as there was no exception taken to any part of the court's charge to the jury, the matter is not properly before us for review. *Brodsky* v. *Red Raven Rubber Co.*, 111 *N. J. L.* 453.

Appellant's fourth and last point is that "the court erred in admitting cross-examination of the witness Gati as to facts and circumstances surrounding the application.

The record shows that the question objected to was never answered, so that no harm was done. Furthermore, the ground of appeal is defective for the reason that it fails to comply with the rule that a ground of appeal should state the question or answer objected to and ruled upon by the trial court. *Pollitt* v. *General Credit Corp.*, 114 *N. J. L.* 432.

We find no merit in any of the points raised on this appeal and are of the opinion that the judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE. LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 13.

*For reversal*—None.